NO. 24-1527

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

**ALEXANDRA E. MELINO,**
*Plaintiff-Appellant*,

**v.**

**BOSTON MEDICAL CENTER,**
*Defendant-Appellee*.

_____

On appeal from the United States District Court
for the District of Massachusetts
No. 1:22-cv-12119-RGS

_____

**APPELLANT'S BRIEF**

_____

Peter Vickery, Esq.
27 Pray Street
Amherst, MA 01002
BBO# 641574
Bar No. 1157454
Tel. (413) 992 2915
Email: peter@petervickery.com


Attorney for Plaintiff-Appellant
ALEXANDRA E. MELINO

## **TABLE OF CONTENTS**

TABLE OF CONTENTS........................................    i

TABLE OF AUTHORITIES ...................................    ii

REASONS WHY ORAL ARGUMENT SHOULD NOT BE HEARD...........    1

JURISDICTIONAL STATEMENT................................    1

STATEMENT OF ISSUES.....................................    1

STATEMENT OF THE CASE...................................    1

SUMMARY OF ARGUMENT.....................................    3

ARGUMENT................................................    4

    1. THE DISTRICT COURT ERRED IN FINDING THAT THE
EMPLOYER HAD ESTABLISHED UNDUE
HARDSHIP.........................................    4

    2. THE DISTRICT COURT ERRED IN DECLINING TO STRIKE
PARAGRAPHS 10-12, 14, AND 22 FROM THE DECLARATION
OF JOHN HICKEY, ESQ..............................    12

CONCLUSION..............................................    17

CERTIFICATES............................................    18

ADDENDUM................................................    21

## TABLE OF AUTHORITIES

### Federal Cases

*Adeyeye v. Heartland Sweeteners, LLC*,
721 F.3d 444 (7th Cir. 2013)................................ 6

*Amoah v. McKinney*, 875 F.3d 60 (1st Cir. 2017)............. 3

*Davila v. Corporacion De Puerto Rico Para La
Difusion Publica*, 498 F.3d 9(1st Cir. 2007)............... 13

*E.E.O.C. v. Union Independiente de la Autoridad
de Acueductos y Alcantarillados de Puerto Rico*,
279 F.3d 49 (1st Cir. 2002)................................ 5

*Goguen ex rel. Est. of Goguen v. Textron, Inc.*,
234 F.R.D. 13(D. Mass. 2006)............................... 9

*Groff v. DeJoy*, 600 U.S. 447 (2023)...................... 5-6

*Hardy v. Loon Mountain Recreation Corp.*,
276 F.3d 18 (1st Cir. 2002)................................ 3

*Hochen v. Bobst Grp., Inc.*,
290 F.3d 446 (1st Cir. 2002)............................... 3

*Katz v. City Metal Co.*, 87 F.3d 26 (1st Cir. 1996)........ 3

*Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc.*,
673 F.3d 1 (1st Cir. 2012)................................ 4-5

*Williams v. Kawasaki Motors Corp., U.S.A.*,
30 F.4th 66 (1st Cir. 2022)................................ 3

### Federal Statutes

28 U.S.C. §§ 1331 and 1343 (a)............................. 1

42 U.S.C. § 2000e-5 (f)................................... 1

### State Statute

G.L. c. 151B.............................................. 1

ii

**<u>REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD</u>**

Appellant respectfully submits that this appeal is not appropriate for oral argument. The briefs and record adequately present the facts and legal arguments, the governing law is well established, and oral argument will not significantly aid the Court's decisional process.

**<u>JURISDICTIONAL STATEMENT</u>**

The District Court had jurisdiction case pursuant to 28 U.S.C. §§ 1331 and 1343 (a), as this case arises under federal law, namely Title VII of the Civil Rights Act ("Title VII") of 1964, as amended, 42 U.S.C. § 2000e-5 (f). The District Court had pendent jurisdiction over Plaintiff's claim under G.L c. 151B. This Court has jurisdiction over Plaintiff's appeal challenging the District Court's order granting summary judgment to Defendant pursuant to 28 U.S.C. § 1291 and Fed. R. App. P. 4(a)(1)(A). Judgment entered May 28, 2024, and Appellant filed the notice of appeal on May 31, 2024. Accordingly, the appeal is timely.

**<u>STATEMENT OF ISSUES</u>**

1.  Whether the District Court erred by granting Defendant's motion for summary judgment and dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

2.   Whether the District Court erred by denying Plaintiff's motion to strike from the Declaration of John M. Hickey, Esq., paragraphs 10-12, 14, and 22.

## STATEMENT OF THE CASE

This case arises out of an employer's COVID-19 vaccine mandate.  Appellant ("Melino") worked as a Registered Nurse at Boston Medical Center ("BMC") until BMC terminated her employment on or about October 15, 2021.  BMC adopted a policy that required employees to be injected with COVID-19 vaccines. RA 118.  Melino requested an exemption from the policy on religious grounds.  RA 100 and 107.  On October 7, 2021, BMC denied Melino's request.  RA 99. 109. BMC terminated Melino's employment on October 15, 2021.  RA 13, ¶ 6.

On December 14, 2022, Melino filed her Complaint to which BMC served its Answer on February 14, 2023. RA 212-213.  On April 23, 2024, BMC moved for summary judgment arguing that Melino had not established a sincerely held religious belief and that accommodating Melino would have caused undue hardship.  RA 26-40.  Melino filed an opposition on May 13, 2024.  RA 128.  On May 10, Melino filed a motion to strike certain paragraphs from the declaration of John Hickey, Esq., to which motion BMC filed an opposition on May 24.  RA 200 and 213.  On May 24, BMC also filed a reply brief in response to Melino's opposition to the motion for summary judgment.  RA 192.  The District Court

granted the motion for summary judgment and denied the motion to
strike on May 28, on which date judgment entered for BMC.
Addendum.  Melino filed the notice of appeal on May 31, 2024. RA
220.

## STANDARD OF REVIEW

This Court reviews the "grant of summary judgment de novo,
examining the record in the light most favorable to the non-
moving party." *Hardy v. Loon Mountain Recreation Corp.*, 276
F.3d 18, 20 (1st Cir. 2002).  With regard to motions to strike,
the Court reviews the decision of the District Cout for abuse of
discretion. *Amoah v. McKinney*, 875 F.3d 60, 62 (1st Cir. 2017).
"[W]e examine the evidence and all fair inferences in the light
most favorable to the non-movant and determine whether the non-
movant has offered 'more than a mere scintilla of evidence,'
warranting the submission of the issue to the jury." *Hochen v.
Bobst Grp., Inc.*, 290 F.3d 446, 453 (1st Cir. 2002) (quoting
*Katz v. City Metal Co.*, 87 F.3d 26, 28 (1st Cir. 1996))."
*Williams v. Kawasaki Motors Corp., U.S.A.*, 30 F.4th 66, 70 (1st
Cir. 2022).

## SUMMARY OF THE ARGUMENT

Melino's religious beliefs prevent her from being injected
with COVID-19 vaccines.  To prove the affirmative defense of
undue hardship, BMC needs to demonstrate that Melino was at
greater risk of catching and spreading COVID-19 than employees

who had received the injections.  In support of its contention
that the injections are effective in stopping infection and
transmission of COVID-19, BMC offers only statements from the
Centers for Disease Control and Prevention (CDC) within the
declaration of John Hickey, Esq.  Attorney Hickey presented no
documents from the CDC (such as publications from that agency
that might be self-authenticating under Fed. R. Evid. 902 (5)),
merely assertions as to what the CDC recommended.  The District
Court denied Melino's motion to strike the paragraphs of
Attorney Hickey's declaration that relied upon the CDC's
statements, and stated even if the court were to grant the
motion to strike, the Court would take judicial notice of the
recommendations of the CDC anyway.  The District Court should
have granted Melino's motion to strike Attorney Hickey's
declaration and denied the motion for summary judgment.

## ARGUMENT

### 1. THE DISTRICT COURT ERRED IN FINDING THAT THE EMPLOYER HAD ESTABLISHED UNDUE HARDSHIP

To establish a prima facie case of religious discrimination
under Title VII of the Civil Rights Act of 1964, § 201, 42
U.S.C. § 2000a, an employee needs to demonstrate:

> (1) a bona fide religious practice conflicts with an
> employment requirement; (2) that he or she brought the
> practice to the [employer's] attention; and (3) that
> the religious practice was the basis for an adverse
> employment decision.

4

*Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc.*, 673 F.3d
1, 8 (1st Cir. 2012). Employers bear the burden of proving the
affirmative defense of undue hardship:

> Once the plaintiff has established this prima facie
> case, the burden shifts to the union to show that it
> made a reasonable accommodation of the religious
> practice or show that any accommodation would result
> in undue hardship.

*E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y
Alcantarillados de Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002).
To prove that accommodating an employee's request would have
caused "undue hardship," an employer needs to show that "the
burden of granting an accommodation would result in substantial
increased costs in relation to the conduct of its particular
business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023). Here, the
District Court did not decide whether Melino had established a
prima facie case but concluded that BMC had met its burden of
establishing undue hardship. The Memorandum and Order states:

> [T]he court need not decide whether Melino has
> made her prima facie case because, even assuming
> she has, her claim fails at the undue hardship
> stage... Melino challenges only the underlying
> assumption that the vaccine protects against
> infection... The problem is this: the record is
> devoid of any evidence from which a reasonable
> juror could give credence to her medical
> hypothesis.

Addendum, pp. 2-3. This was error. The onus should be on BMC
to prove that the products advertised as COVID-19 vaccines
actually function as vaccines so as to prevent recipients from

catching and spreading COVID-19.  It is not Melino's task to
prove that they do not.  The supposed effectiveness of the
products is an essential element of the defense; in fact, it is
the notion on which the affirmative defense entirely stands.
After all, the employer "bears the burden of proof, so it must
show, as a matter of law, that any and all accommodations would
have imposed an undue hardship."  *Adeyeye v. Heartland
Sweeteners, LLC*, 721 F.3d 444, 455 (7th Cir. 2013) cited in
*Groff*, 600 U.S. 447, 473.  If the injections provided employees
with some degree of protection against the symptoms of COVID-19
for, say, three months after which the level of protection waned
to nothing, then BMC could have accommodated Haley by letting
her work remotely for three months.  At that point, Haley would
have been no more vulnerable to COVID-19 than her injected
counterparts.  Because BMC bore the burden of determining
whether such an accommodation was possible, it bore the
concomitant burden of determining how effective, if at all, the
products were in preventing recipients from catching COVID-19
and for how long any such supposed effectiveness would likely
endure before waning to zero. BMC offered no evidence that it
engaged in any such assessment.

That said, even if, arguendo, BMC did not bear the burden
of assessing the likely duration of any supposed protection
against COVID-19, there was (and is) a genuine issue as to this

material fact.  If the vaccines worked, it would not be
difficult for BMC to establish undue hardship.  But BMC did not
even try to make the case that the vaccines do, in fact, work.
For example, in her Complaint Melino alleged that, "The products
known as 'COVID-19 vaccines' produced by Johnson & Johnson,
Moderna, and Pfizer do not prevent recipients from contracting
and transmitting COVID-19." RA 3.  In response, BMC stated:

> 13. Defendant objects to Paragraph 13 as it fails to
> comply with Fed. R. Civ. P. 8(a)(2) and contains
> allegations that are immaterial to this Complaint.
> Further responding, Defendant states it lacks
> sufficient knowledge and information to respond to the
> allegations contained in Paragraph 13 and therefore
> denies them and calls upon Plaintiff to prove the
> same.

RA 14.  BMC clearly states that it "lacks sufficient knowledge
and information to respond to the allegations" that the products
do not prevent recipients from contracting and transmitting
COVID-19.  Similarly, in its Answers to Interrogatories, BMC
averred that the effectiveness of the products — on which its
affirmative defense of undue hardship entirely depends —
requires "statistical, empirical, and scientific analysis."

> Interrogatory No. 4
>
> Do COVID-19 vaccines prevent recipients contracting
> (i.e. catching) COVID-19?
>
> Answer No. 4
>
> BMC objects to this request on the basis that the
> terms "contracting" and "catching" are vague and
> ambiguous in the context here of asking BMC to draw
> broad conclusions regarding complex scientific

questions related to recently developed COVID-19
vaccines. Further responding, Defendant states that it
lacks knowledge sufficient to respond to this
interrogatory, and states that because of the
statistical, empirical, and scientific analysis
necessary for Defendant to respond with its own
opinion, the request is overly burdensome and
Defendant cannot fairly respond. Further responding,
Defendant further objects on the grounds that this
Interrogatory seeks information that is not relevant
to the Complaint and that is not reasonably calculated
to lead to the discovery of admissible evidence.

Interrogatory No. 5

Do COVID-19 vaccines stop recipients transmitting
(i.e. spreading) COVID-19?

Answer No. 5

BMC objects to this request on the basis that the
terms "transmitting" and "spreading" are vague and
ambiguous in the context here of asking BMC to draw
broad conclusions regarding complex scientific
questions related to recently developed COVID-19
vaccines. Further responding, Defendant states that it
lacks knowledge sufficient to respond to this
interrogatory, and states that because of the
statistical, empirical, and scientific analysis
necessary for Defendant to respond with its own
opinion, the request is overly burdensome and
Defendant cannot fairly respond. Further responding,
Defendant further objects on the grounds that this
Interrogatory seeks information that is not relevant
to the Complaint and that is not reasonably calculated
to lead to the discovery of admissible evidence.

RA 208.  By way of the interrogatory answers signed by Attorney

Hickey BMC asserted that the question of whether the vaccines

stop recipients from catching and spreading COVID-19 is not only

"not relevant and not reasonably calculated to lead to the

discovery of admissible evidence" but also "overly burdensome"

because BMC "lacks knowledge sufficient to respond" because of

the "statistical, empirical, and scientific analysis necessary for Defendant to respond with its own opinion."

So, according to its interrogatory answers, BMC cannot not "draw broad conclusions regarding complex scientific questions related to recently developed COVID-19 vaccines." This is inconsistent with the assertion that "requiring employees to be vaccinated was the best way to protect the hospital against liability for hospital-acquired COVID-19 infections" and demonstrates that this is a triable issue of material fact. Similarly, in her Complaint (RA 3) Melino alleged:

> 14. According to the results of the drug trials that Pfizer conducted in 2020 in connection with its "vaccine," the absolute risk reduction (the reduction of the risk that a recipient would have a symptomatic positive test for COVID-19 after receiving the drug) was 0.84%.[1] As cardiologist Dr. Aseem Malhotra stated in the *European Scientist*:
>> [W]hat was reported in the mainstream news as being 95% effective against infection was in fact relative risk reduction, not absolute risk reduction from the double blind randomized controlled trial that took place during the more lethal circulating post-Wuhan ancestral strain of the virus. That specific NEJM paper which underpinned the emergency use authorization of the Pfizer mRNA vaccine actually revealed an absolute risk reduction (ARR) of 0.84%. In other words, for every 119 individuals vaccinated one person would be protected from being infected... Furthermore, as newer and thankfully, less lethal, mutated strains became dominant, any protection against infection at the very least became less effective and likely completely ineffective,

---

[1] https://www.thennt.com/review-covid-analysis-2020/

9

> even if there is some significant (as yet to
> be fully determined in absolute individual
> terms) protection against serious illness
> and death.[2]

In response to this allegation, BMC stated (RA 14):

> Defendant objects to Paragraph 14 as it fails to
> comply with Fed. R. Civ. P. 8(a)(2) and contains
> allegations that are immaterial to this Complaint. To
> the extent an answer is required, Defendant states the
> footnote references and quotations contained in
> Paragraph 14 are written documents that speak for
> themselves. Defendant denies any mischaracterization
> of the language or import of the documents.

The documents do indeed speak for themselves.  As alleged in the

Complaint, they show that the absolute risk reduction is

extraordinarily low, verging on negligible.

Nevertheless, BMC contended that requiring employees to be

vaccinated was the best way to protect the hospital against

liability for hospital-acquired COVID-19 infections.  But the

FDA did not approve the vaccines for the prevention of infection

or transmission of COVID-19.  On May 10, 2021, the FDA's Chief

Scientist, Denise M. Hinton, wrote to Pfizer that:

> Based on the totality of scientific evidence available
> to FDA, it is reasonable to believe that Pfizer-
> BioNTech COVID-19 Vaccine may be effective in

---

[2] Dr. Aseem Malhotra, "Being Pro-Covid 19 Vaccines and Pro-
transparency are not mutually exclusive – ending all mandates
globally and accessing the raw data is now essential to restore
trust," *European Scientist* (August 16, 2022).

https://www.europeanscientist.com/en/features/being-pro-covid-
19-vaccines-and-pro-transparency-are-not-mutually-exclusive-
ending-all-mandates-globally-and-accessing-the-raw-data-is-now-
essential-to-restore-trust/

> preventing COVID-19, and that, when used under the
> conditions described by this authorization, the known
> and potential benefits of Pfizer-BioNTech COVID-19
> Vaccine when used to prevent COVID-19 outweigh its
> known and potential risks.

RA 148. Letter from Denise M. Hinton to Pfizer, Inc., May 10,

2021, I.2., p. 3.[3]  The words "may be effective" do not convey a

great deal of certainty.

BMC's defense of undue hardship rests entirely on the

faulty premise that the products advertised as COVID-19 vaccines

protect against infection and transmission of COVID-19,

something that the evidence shows to be in dispute.  BMC offered

no expert testimony in support.  Instead, it merely asserted

that "Based on its experience during the pandemic, BMC

reasonably concluded that requiring employees to be vaccinated

was the best way to protect the hospital against liability for

hospital-acquired COVID-19 infections." RA 38.  In support, BMC

offered the Declaration of John M. Hickey, Esq., whose testimony

regarding the recommendations of the CDC Melino moved to strike.

RA 200.

---

[3] This document is the FDA's authorization issued to Pfizer, Inc.
See Affidavit of Peter Vickery, Esq. RA 143. As a publication
issued by a public authority is self-authenticating within the
meaning of Fed. R. Evid. 902 (5).

**2. THE DISTRICT COURT ERRED IN DECLINING TO STRIKE PARAGRAPHS 10-12, 14, AND 22 FROM THE DECLARATION OF JOHN HICKEY, ESQ.**

In support of its motion for summary judgment, BMC offered the Declaration of John M. Hickey, Esq. RA 110. The applicable rule of civil procedure states unequivocally that an affidavit in support of a motion for summary judgment must set out facts that would be admissible at trial:

> An Declaration or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56 (c) (4). In applying the rule, the District Court has held that:

> Generally speaking, evidence must be admissible at trial in order to be considered on summary judgment. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 49–51 (1st Cir.1990). A significant exception is Declarations; under Rule Fed. R. Civ. P. 56 (e), Declarations, although not themselves admissible at trial, may be offered in support of, or opposition to, summary judgment if they set forth facts that would be admissible under the Federal Rules of Evidence… A motion to strike is the proper vehicle for challenging the admissibility of materials submitted in support of a motion for summary judgment.

*Goguen ex rel. Est. of Goguen v. Textron, Inc.,* 234 F.R.D. 13, 16 (D. Mass. 2006). Melino moved to strike certain paragraphs of Attorney Hickey's Declaration because they contain the following statements regarding recommendations of the Centers for Disease Control and Prevention (CDC) that are not admissible (emphases added):

12

10. The hospital's decision to require employees to be vaccinated against COVID-19 was **based on the recommendation of the Center for Disease Control and Prevention ("CDC")** that vaccination was the best way to protect against severe illness, hospitalization, and death, and reduce the transmission of COVID-19.

11. **Based on the recommendations of the CDC** and its own experience between January 31, 2020 and July 1, 2021, BMC knew that healthcare workers were more likely to contract COVID-19 than others because they faced significant exposure to the virus through infected patients and other healthcare staff.

12. Importantly, **based on the recommendations of the CDC** and its own experience between January 31, 2020 and July 1, 2021, BMC knew that healthcare workers were at increased risk of infecting their patients, which included persons who were medically vulnerable to serious complications and death from the disease.

14. At the time BMC implemented the Policy, **the CDC recommended vaccination as the best way to prevent COVID-19 infection and transmission of the virus.**

22. **Based on recommendations from the CDC**, BMC determined that alternatives to the COVID-19 vaccine, such as masking, periodic testing, and social distancing, would not be as effective as the COVID-19 vaccine in reducing transmission. BMC also determined, from its experience between January 31, 2020 and July 1, 2021, that social distancing is not always practicable for staff and patients and testing is inadequate to reduce transmission because it may miss infections on days staff are not tested.

These statements in bold are hearsay within the meaning of Fed. R. Evid. 801 (c) and "[i]t is black-letter law that hearsay evidence cannot be considered on summary judgment." *Davila v. Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 17 (1st Cir. 2007). Attorney Hickey presented no documents from the CDC (such as publications from that agency that might be

13

self-authenticating under Fed. R. Evid. 902 (5)), merely

assertions as to what the CDC recommended.

Attorney Hickey is not an expert on this matter.  He is the

Director of Employee and Labor Relations at BMC, not an employee

of the CDC, and not a scientist or a physician.  In fact,

Plaintiff (through Attorney Hickey) has stated that the question

of whether the COVID-19 vaccines stop infection and transmission

is beyond its ken:

> Interrogatory No. 4
>
> Do COVID-19 vaccines prevent recipients contracting
> (i.e. catching) COVID-19?
>
> Answer No. 4
>
> BMC objects to this request on the basis that the
> terms "contracting" and "catching" are vague and
> ambiguous in the context here of asking BMC to draw
> broad conclusions regarding complex scientific
> questions related to recently developed COVID-19
> vaccines. Further responding, Defendant states that it
> lacks knowledge sufficient to respond to this
> interrogatory, and states that because of the
> statistical, empirical, and scientific analysis
> necessary for Defendant to respond with its own
> opinion, the request is overly burdensome and
> Defendant cannot fairly respond. Further responding,
> Defendant further objects on the grounds that this
> Interrogatory seeks information that is not relevant
> to the Complaint and that is not reasonably calculated
> to lead to the discovery of admissible evidence.
>
> Interrogatory No. 5
>
> Do COVID-19 vaccines stop recipients transmitting
> (i.e. spreading) COVID-19?
>
> Answer No. 5
>
> BMC objects to this request on the basis that the
> terms "transmitting" and "spreading" are vague and

> ambiguous in the context here of asking BMC to draw
> broad conclusions regarding complex scientific
> questions related to recently developed COVID-19
> vaccines. Further responding, Defendant states that it
> lacks knowledge sufficient to respond to this
> interrogatory, and states that because of the
> statistical, empirical, and scientific analysis
> necessary for Defendant to respond with its own
> opinion, the request is overly burdensome and
> Defendant cannot fairly respond. Further responding,
> Defendant further objects on the grounds that this
> Interrogatory seeks information that is not relevant
> to the Complaint and that is not reasonably calculated
> to lead to the discovery of admissible evidence.

RA 206-210. By way of the interrogatory answers signed by

Attorney Hickey, BMC asserted that the question of whether the

vaccines stop recipients from catching and spreading COVID-19 is

not only "not relevant and not reasonably calculated to lead to

the discovery of admissible evidence" but also "overly

burdensome" because Defendant "lacks knowledge sufficient to

respond" because of the "statistical, empirical, and scientific

analysis necessary for Defendant to respond with its own

opinion." So, according to its interrogatory answers, BMC

cannot not "draw broad conclusions regarding complex scientific

questions related to recently developed COVID-19 vaccines."

Later, however, Attorney Hickey averred:

> 14. At the time BMC implemented the Policy, the CDC
> recommended vaccination as the best way to prevent
> COVID-19 infection and transmission of the virus.

These positions are inconsistent. On the one hand, BMC

through Attorney Hickey contends that the question of whether

vaccination stops COVID-19 infection and transmission would

require BMC to draw broad conclusions regarding complex
scientific questions requiring overly-burdensome statistical,
empirical, and scientific analysis; on the other hand, BMC
through Attorney Hickey also contended that vaccination was the
best way to prevent COVID-19 infection and transmission because
the CDC said so.

For BMC to rely on the CDC for the proposition that the
products prevent COVID-19 infection and transmission (something
BMC characterizes as a "broad conclusion regarding complex
scientific questions"), it should have had to cite to particular
CDC publications.  As stated above, the publications from that
agency may well be self-authenticating under Fed. R. Evid. 902
(5), but Melino and the Court deserve to know exactly which CDC
publications BMC claims to be relying upon and exactly what
those publications recommended.  Attorney Hickey's hearsay
assertions were not sufficient and should have been stricken.

In submitting the declaration, BMC effectively asked the
District Court to assume the accuracy of the affiant's
statements as to what the CDC recommended, statements that BMC
offered for the truth of the assertion that the CDC did, in
fact, make those recommendations about vaccination.  Admitting
the contested paragraphs of the declaration was an abuse of
discretion.

16

<u>CONCLUSION</u>

For the foregoing reasons, Appellant Alexandra E. Melino respectfully requests that this Honorable Court reverse and remand.

                              Respectfully Submitted
                              Alexandra E. Melino
                              By Her Attorney:

                              */s/Peter Vickery, Esq.*
                              Peter Vickery, Esq.
                              27 Pray Street
                              Amherst, MA 01002
                              BBO# 641574
                              Bar No. 1157454
                              Tel. (413) 992 2915
          August 4, 2024      Email: peter@petervickery.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I, Peter Vickery, Esq., certify that:

1. This document complies with the type-volume limit of Fed. R. App. P. 32 (a) (7) (B) because, excluding the parts of the document exempted by the Fed. R. App. P. 32 (f), this document contains 3,823 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a monospaced typeface using Microsoft Word, Courier New, 12-point font.

*/s/Peter Vickery, Esq.*
Peter Vickery, Esq.
Attorney for Plaintiff-
Appellant
ALEXANDRA E. MELINO

August 4, 2024

## CERTIFICATE OF SERVICE

I, Peter Vickery, Esq., hereby certify that I have this day caused a copy of this document to be filed through the ECF system and to be served via the Notice of Electronic Filing (NEF) on Attorney Jeffrey T. Collins.

*/s/Peter Vickery, Esq.*
Peter Vickery, Esq.
Attorney for Plaintiff-
Appellant
ALEXANDRA E. MELINO

August 4, 2024

18

**ADDENDUM**

**TABLE OF CONTENTS**

MEMORANDUM & ORDER.....................................    20

JUDGMENT..............................................    25

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-12119-RGS

ALEXANDRA MELINO

v.

BOSTON MEDICAL CENTER

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

May 28, 2024

STEARNS, D.J.

Alexandra Melino brings this religious discrimination action against her former employer, Boston Medical Center (BMC). She asserts that BMC violated Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-2(a), and the Massachusetts anti-discrimination law (Chapter 151B), Mass. Gen. Laws ch. 151B, when it terminated her in the fall of 2021 for failing to comply with its COVID-19 vaccination requirement. Defendant now moves for summary judgment. For the following reasons, the court will allow the motion.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Courts assess religious discrimination claims[1] using a two-part framework:

> First, a plaintiff must make his prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action. The burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship.

*Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023) (cleaned up). Here, the court need not decide whether Melino has made her prima facie case because, even assuming she has, her claim fails at the undue hardship stage.

---

[1] The court analyzes the Title VII and Chapter 151B claims together, as "Chapter 151B uses a similar framework [to that of Title VII] to evaluate failure to accommodate claims." *See Mekonnen v. OTG Mgmt.*, LLC, 394 F. Supp. 3d 134, 157 (D. Mass. 2019).

As the Supreme Court recently clarified in *Groff v. DeJoy*, 600 U.S. 447 (2023), an accommodation poses undue hardship "when [the] burden is substantial in the overall context of an employer's business." *Id.* at 468.  In determining whether a burden is substantial, a court must consider "all relevant factors in the case at hand, including the particular accommodations at issue, and their practical impact in light of the nature, size and operating cost of [an] employer."  *Id.* at 470-471 (internal quotation marks and citations omitted) (alteration in original).

Defendant proffers evidence that (1) Melino could not work remotely because her job responsibilities included providing direct care to patients; (2) Melino could not work in-person while she remained unvaccinated without risking the health and safety of her patients (vulnerable individuals in critical condition who often relied on respirators) and other medical professionals;[2] and (3) any feasible accommodation would have imposed "substantial increased costs" on BMC.  *Id.* at 470.

---

[2] The court denies the motion to strike for failure to comply with the conference requirement of L.R. 7.1.  The court notes, however, that even if the court were to strike the relevant paragraphs of the Hickey Declaration, BMC need not rely on this testimony to establish the recommendations of the Centers for Disease Control and Prevention (CDC).  These recommendations, and the medical and statistical information upon which they rest, are subject to judicial notice. *See* Fed. R. Evid. 201(b)(2); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of factual information on CDC's website).

Melino does not dispute that, if the vaccine provides protections against COVID-19 infection and unvaccinated individuals are consequently at higher risk of transmitting the disease, this evidence suffices to show that accommodating her request would "substantial[ly]" burden the agency's operations.[3]  *Id.* at 468; *see* Pl.'s Opp'n to Mot. for Summ. J. (Pl.'s Opp'n) [Dkt # 23] at 10 ("If the vaccines worked, it would not be difficult for Defendant to establish undue hardship.").   She challenges only the underlying assumption that the vaccine protects against infection.   The problem is this: the record is devoid of any evidence from which a reasonable juror could give credence to her medical hypothesis.

Melino points to a statement by a spokesperson of the U.S. Food and Drug Administration (FDA) that the vaccine does not protect against infection with the SARS-CoV-2 virus.[4]  But even assuming this statement is

_____

[3] This is wise.  Courts across the country have found similar evidence sufficient to establish undue hardship.  *See, e.g.*, *Conner v. Raver*, 2023 WL 5498728, at *6 (N.D. Cal. Aug. 24, 2023); *Beickert v. N.Y.C. Dep't of Educ.*, 2023 WL 6214236, at *5-6 (E.D.N.Y. Sept. 25, 2023).

[4] It is not clear whether Melino also intends to rely on the two articles cited cursorily in footnotes 2 and 3, as her in-text argument focuses on the alleged inconsistency between BMC's position in its motion and its position in its pleading and discovery responses (an inconsistency that, even if existent, does nothing to either prove or disprove the effectiveness of the vaccine).  To the extent she does, however, the court finds her argument unavailing.  Not only are the articles inadmissible as hearsay, but they also are not within the record before the court.  The link provided for the first

admissible non-hearsay, the quote is taken out of context.  When the relevant paragraph is read as a whole, it becomes clear that the FDA official was merely clarifying that the vaccine is designed to prevent infection with the *disease* caused by the SARS-CoV-2 virus and not infection by the virus itself. *See* Ex. B to Vickery Aff. [Dkt # 23-5] at 12.  So understood, the statement affirms rather than casts doubt upon the efficacy of the vaccine in protecting against COVID-19.

## ORDER

For the foregoing reasons, the motion for summary judgment is ALLOWED.  The Clerk shall enter judgment against Melino and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

article (upon which the second article relies for the quoted absolute risk reduction rate) turns up an error page, and Melino has not otherwise attached a copy of the article for the court's review.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
Alexandra Melino
    Plaintiff

                               CIVIL ACTION NO.:
           v.                    1:22-cv-12119-RGS

Boston Medical Center
    Defendant
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **JUDGMENT**
May 28, 2024

Stearns, D.J.


In accordance with the Memorandum and Order entered on May 28, 2024, GRANTING Defendant's Motion for Summary Judgment, Judgment is entered against Alexandra Melino. This case is hereby DISMISSED.

      SO ORDERED.

                        /s/ Richard G. Stearns
                        RICHARD G. STEARNS
                        United States District Judge